# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KAREN and STANLEY MIEZEJEWSKI, | : |
| Plaintiffs, | : CIVIL ACTION NO. 3:12-1000 |
| v. | : (JUDGE MANNION)[1] |
| INFINITY AUTO INSURANCE COMPANY, | : |
| Defendant | : |

## MEMORANDUM[2]

Presently before the court is the defendant's motion for summary judgment, (Doc. No. 17). Finding that a reasonable jury could not conclude that the defendant acted in bad faith thereby violating its duties under the contract of insurance or Pennsylvania's bad faith statute, 42 Pa.C.S. §8371, the motion for partial summary judgement will be **GRANTED**.

## I.    BACKGROUND

This case arises out of a car accident when a third-party driver backed

---

[1] The instant action was originally assigned to the Honorable A. Richard Caputo. Pursuant to the verbal order dated January 4, 2013, the matter was reassigned to the undersigned.

[2] For the convenience of the reader of this document in electronic format, hyperlinks to the court's record and to authority cited have been inserted. No endorsement of any provider of electronic resources is intended by the court's practice of using hyperlinks.

into Plaintiff Karen Miezejewski at a gas station at around 6:30 am on December 3, 2009. (Doc. No. 18, Exh. A).[3] As the parties point out, the central issue is whether it was bad faith for the defendant to not include Mrs. Miezejewski's wage loss claim in the calculation of damages. (Doc. No. 24). Based on the filings, the parties do not contest the diagnosis that the plaintiff sustained a left knee and back injury from the accident, which exacerbated some preexisting conditions. (Exh. B - K). When she was examined by orthopaedic specialists on March 2, 2010, the doctor noted that "the accident defiantly exacerbated some preexisting arthritis." (Exh. E). A follow-up with another orthopaedic specialists on September 15, 2010 found a similar diagnosis. The records show the doctor determined "she always had some arthritis in [her left] knee that has been severe in nature, but her symptoms are significantly exacerbated by the auto accident" causing her more pain. (Exh. I).

Mrs. Miezejewski started work at Corning Glass in Pittston, Pennsylvania in July 2009. (Exh. Q, p. 23). Her job was inventory control and involved maintaining a proper count of all the products in a warehouse. (Exh.

---

[3]Unless otherwise noted, citations are to the defendant's exhibits attached to their statement of facts. (Doc. No. 18). The plaintiffs included two exhibits with their statement of facts: the deposition testimony of the defendant's corporate litigation specialist and the human resource manager at Mrs. Miezejewski's former place of employment, Corning Glass in Pittston, Pennsylvania. (Doc. 24, Exhs. A & B).

A, p. 11). She spent approximately 80% of her day on her feet and walking around the warehouse counting the stock. (Id., p. 13). On the day of the accident, Mrs. Miezejewski noticed that her left knee, neck, and back started to hurt more and more as the day went on. She stayed at work and completed her shift without getting any emergency treatment. (Id., p. 31-33).

Several months after the accident on March 25 2010, the plaintiff's supervisor reviewed her job performance. (Exh. T, Att. A). She was rated as "meets expectations" in work performance, professionalism, policy compliance, dependability, communication, and judgment. She was rated as "exceeds expectation" in initiative, motivation, and relationships with co-workers. (Id.). Her supervisor noted she won an award for the happiest person and even mentioned the fact she had a car accident in December 2009, but still reported for an eight-hour workday. (Id.). Prior to the accident through at least March 2010, no reports or complaints were made about Mrs. Miezejewski's job performance. (Exh. Q, p. 30).

Mrs. Miezejewski's physical abilities began to suffer and affect her duties as the year progressed. This situation came to the attention of her superiors at some point prior to November 2010. (Id., p. 29). The warehouse jobs are interconnected so that a slowdown at one position impacts all the team members. (Id., p. 30). With her performance suffering and affecting the rest of the staff, Mrs. Miezejewski's employer terminated her on November 4,

2010 due to her physical limitations. (Id., p. 31). Several other employees were laid off at the same time as Mrs. Miezejewski. The human resources manager was unsure why the other employees were terminated, but other people were subsequently hired to fill the recently vacated positions. (Id., p. 36-37).

On May 11, 2010, the defendant sent a letter to the plaintiff informing her that her first-party coverage limit of $5,000 had been exhausted. (Exh. L). On August 18, 2011, plaintiffs' counsel informed the defendant they settled with the other driver for his policy limit of $25,000, but that sum was insufficient to cover Mrs. Miezejewski's damages. As such, they made a UIM claim on her behalf. (Exh. M). On August 22, 2011, the defendant responded noting her policy's limited tort option and a $15,000 UIM policy limit per person. (Exh. N). The defendant also requested the medical treatment documents available to that point and the plaintiffs provided those documents on September 7, 2011. (Exh. O).

The defendant's claim adjuster reviewed the medical files and also the deposition of the human resources manager from Mrs. Miezejewski's former place of employment on January 18, 2012. (Exh. P). In reviewing the deposition, he found that she had "met or exceeded expectation and even won an award for happiest person." He determined that "there was a noted slow down in job performance, which the [supervisor] related to [Mrs.

4

Miezejewski's] knee injury" and led to her termination in November 2010 (Id.). Based on his review of the available evidence, the assigned adjustor valued Mrs. Miezejewski's claim at somewhere between $30,000 and $32,500, pegging the defendant's share, less the other driver's coverage, between $5,000 and $7,500. (Id.).

In determining that figure, the claim adjustor cited several issues related to Mrs. Miezejewski's preexisting arthritis, (Exh. R, p. 41-43), her March 2010 job evaluation showing positive work performance, (Id., p. 47, 50), and whether her termination was in fact directly linked to the accident or was part of "layoffs" discussed by the supervisor. (Id., p. 52). On January 25, 2012, the plaintiffs' counsel contacted the claim adjustor requesting a claim status. (Exh. P). The claim adjustor initially offered $5,000 to settle the claim, but that offer was not accepted. During that same period, he requested Mrs. Miezejewski's medical records from before the accident so he could evaluate her situation with a more complete record. (Exh. P; Exh. R, p. 41). He was looking to investigate the doctors notes that indicated she was suffering from a degenerative spine condition and arthritis. (Exh. R, p. 42). Despite that request, no pre-accident medical records were sent to the defendant. (Id.). Mrs. Miezejewski rejected the second offer of $7,500 in April 2012. (Exh. P). On May 3, 2012, this case was filed.

5

## II. PROCEDURAL HISTORY

This case was initially commenced in the Pennsylvania Court of Common Pleas for Lackawanna County on May 3, 2012 when the plaintiffs filed their two-count complaint. (Doc. No. 1). The defendant removed the case to this court on May 29, 2012. (Id.). The defendant filed the instant motion for partial summary judgment, statement of facts with attached exhibits, and brief in support of that motion on August 16, 2013. (Doc. No. 17, Doc. No. 18, Doc. No. 19). The plaintiffs filed their response to defendant's statement of facts[4] and brief in opposition on September 13, 2013. (Doc. No. 22, Doc. No. 24). The defendant filed a reply brief on September 25, 2013. (Doc. No. 25). The motion is now ripe for the court's ruling.

---

[4]The plaintiffs filed a response to the defendant's statement of facts that, paragraph by paragraph, either admitted or denied each fact presented. Most of the denials amount to the plaintiffs stating that the evidence and documents relied upon "speak for themselves." (Doc. No. 22). This filing is tantamount to an answer rather than a counter-statement of facts. Merely denying each fact without directing the court to the evidence relied upon in making that representation is not a proper response at this stage of the litigation. As required by Local Rule 56.1, the responding party is to demonstrate each fact where "it is contested that there exists a genuine issue to be tried." Without evidence to the contrary, a mere denial by itself does not establish a genuine issue for trial.

## III.    STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, the discovery [including, depositions, answers to interrogatories, and admissions on file] and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *see also* Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Aetna Cas. & Sur. Co. v. Ericksen, 903 F. Supp. 836, 838 (M.D. Pa. 1995). At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249; *see also* Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (a court may not weigh the evidence or make credibility determinations). Rather, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *See* Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007).

To prevail on summary judgment, the moving party must affirmatively

7

identify those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323-24. The moving party can discharge the burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." *In re Bressman*, 327 F.3d 229, 238 (3d Cir.2003); *see also Celotex*, 477 U.S. at 325. If the moving party meets this initial burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). However, if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23; *see also Jakimas v. Hoffman-La Roche, Inc.*, 485 F.3d 770, 777 (3d Cir. 2007).

## IV. DISCUSSION

### The Bad Faith Claim

The plaintiffs argue that the defendant acted in bad faith in not including the plaintiffs' wage losses when determining a reasonable offer of settlement. Pennsylvania's bad faith statute, 42 Pa.C.S. §8371, outlines actions a court may take should it find that an insurer has acted in bad faith and reads:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
> (2) Award punitive damages against the insurer.
> (3) Assess court costs and attorney fees against the insurer.

42 Pa.C.S. §8371. The Third Circuit has subsequently defined bad faith under this statute:

> 'Bad faith' on part of insurer is any frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent. For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (*i.e.*, good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith.

*Northwestern Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 137 (3d Cir.2005) (quoting *Terletsky v. Prudential Prop. and Cas. Ins. Co.*, 437 Pa.Super. 108, 649 A.2d 680, 688 (1994)). To succeed on a bad faith claim, a plaintiff must demonstrate "(1) that the insurer lacked a reasonable basis for denying

9

benefits; and (2) that the insurer knew or recklessly disregarded its lack of reasonable basis." *Verdetto v. State Farm Fire & Cas. Co.*, 837 F. Supp. 2d 480, 484 (M.D. Pa. 2011) *aff'd*, 2013 WL 175175 (3d Cir. Jan. 17, 2013) (quoting *Klinger v. State Farm Mut. Auto. Ins. Co.*, 115 F.3d 230, 233 (3d Cir.1997)). Mere negligence, however, is not sufficient to establish a bad faith claim. *See id.* (citing *Polselli v. Nationwide Mut. Fire Ins. Co.*, 23 F.3d 747, 751 (3d Cir.1994)). In addition, a plaintiff must demonstrate bad faith by clear and convincing evidence. *See id.*

"The 'clear and convincing' standard requires that the plaintiff show 'that the evidence is so clear, direct, weighty and convincing as to enable a clear conviction, without hesitation, about whether or not the defendants acted in bad faith.'" *J.C. Penny Life Ins. Co. v. Pilosi*, 393 F.3d 356, 367 (quoting *Bostick v. ITT Hartford Group, Inc.*, 56 F.Supp.2d 580, 587 (E.D.Pa.1999)). The plaintiffs' burden is equally high at the summary judgment stage of litigation and they must point to evidence that meets this heavy evidentiary requirement. *J.C. Penny*, 393 F.3d at 367 (citing *Kosierowski v. Allstate Ins. Co.*, 51 F.Supp.2d 583, 588 (E.D.Pa.1999)).

The plaintiffs raise two specific issues in arguing the instant motion should be denied. First they claim the investigation was completed in bad faith as the defendant did not review the first party medical file, did not request

10

permission to speak with the plaintiff, and did not review any of the pre-accident medical records. (Doc. No. 24). Further, the plaintiffs argue the defendant acted in bad faith by not giving any value to Mrs. Miezejewski's lost wage claim "despite overwhelming and uncontroverted evidence that Karen Miezejewki's separation from employment occurred as a direct result of the accident at issue." (Id.). The defendant counters that these actions do not amount to bad faith as the evidence provided by the plaintiffs at the time of the evaluation gave them a reasonable basis to value the claim at between $30,000 and $32,500. (Doc. No. 25).

As to the first party file, it is unclear how review of those documents would have made any difference in the defendant's valuation. Plaintiffs provided the defendant with extensive medical records related to the accident on September 12, 2011. (Exh. O). There is nothing before the court to indicate the plaintiffs sought to have the defendant review the first-party file. Moreover, there is nothing to show what was included in that file or how it would have affected the adjustors determination. "A plaintiff in a bad faith claim must show that the outcome of the case would have been different if the insurer had done what the insured wanted done." *Blaylock v. Allstate Ins. Co., 2008 WL 80056, *13 (M.D.Pa. Jan. 7, 2008)*(citing *Zappile v. AMEX Assurance Co., 928 A.2d 251, 262 (Pa.Super.2007)*). As the record contains

11

no evidence that the plaintiffs communicated this desire to the defendant or any indication of how those records would impact the valuation of the claim, this argument fails.

Turning to the argument that it is bad faith for the defendant not to request permission to speak with the plaintiffs, the defendant correctly notes that they spoke "with plaintiffs' counsel and [the defendant] knew plaintiffs' position via their attorney." (Doc. No. 25). As with the first-party file, the plaintiffs fail to articulate a reason or cite a case in support to explain how this failure demonstrates bad faith. Plaintiffs were represented by counsel throughout the claim process and counsel regularly communicated with the defendant. (Exhs. P, R). Had the plaintiffs wished to testify in support of their position that the offers of $5,000 and $7,500 were too low, there is nothing in the record to indicate the defendant would have rejected such a proposal. In fact, it was the adjustor who was continually asking for additional information. (Exh. R, p. 41-42). Plaintiffs further fail to articulate how this would have altered the defendant's evaluation or offer. Failure to request permission to speak with the plaintiffs does not constitute bad faith in this case.

Moving onto the pre-accident medical records, there is abundant evidence the defendant requested this information from the plaintiffs. (Exh. P; Exh. R, p. 41-42). Moreover, given that several of the medical records

provided by the plaintiffs indicated Mrs. Miezejewski had pre-existing arthritis and possibly a degenerative spine disorder, (Exhs. E, I), the request was reasonable and justified. As with the previous two allegations of an inadequate investigation, the failure to review pre-accident records that were requested by the defendant, but not provided by the plaintiffs, does not indicate bad faith.

The court does not find those alleged shortcomings amount to bad faith even when looking at all three together. There is no legal requirement that insurance companies conduct perfect investigations. "An insurance company simply must show it conducted a review or investigation sufficiently thorough to yield a reasonable foundation for its action." *Krisa v. Equitable Life Assur. Soc., 113 F.Supp.2d 694, 704 (M.D.Pa. 2000)*(quoting *Cantor v. The Equitable Life Assur. Soc'y, 1999 WL 219786, *3 (E.D.Pa. April 12, 1999)*).

Finally, the court must determine whether not including Mrs. Miezejewski's wage loss claim amounts to bad faith. The plaintiffs point to the testimony of her supervisor as conclusively establishing such bad faith as they characterize it as "uncontroverted evidence" that she lost her job because of injuries stemming from her car accident. (Doc. No. 24). The plaintiffs further point to the defendant's July 2013 offer of $15,000 to settle the UIM claim after the initiation of this suit was "without any additional information" beyond

13

what was available in January and April 2012. (Doc. No. 24).

Dealing first with the $15,000 offer, the parties deposed the Mrs. Miezejewki in April 2013 and her former supervisor in June 2013. Specifically focusing on her supervisor, she noted that Mrs. Miezejewski was a hard worker, received several raises, and was dedicated to the job. (Exh. T, p. 30-31, 35, 39). However, by November 2010 she was no longer able to keep up with the job requirements, so she was terminated. (Id., p. 44). Given this evidence, the plaintiffs' argument is unsupported by the record. Testimony from her supervisor as to her job performance and reason for termination directly impact the wage loss claim. *See Thomer,* 790 F.Supp.2d at 376 (additional relevant information supported defendant's increase in settlement amount from $30,000 to $50,000 demonstrating lack of bad faith). As such, the increased offer itself, in light of the additional evidence available in July 2013, is not sufficient evidence of bad faith.

Finally, the pointing to the human resources manager's deposition, the plaintiffs argue the defendant exhibited bad faith by ignoring evidence they characterize as "overwhelming." (Doc. No. 24). The human resources manager did note she understood the plaintiff was terminated because of her decreased ability to work in November 2010. (Exh. Q, p. 29-30). However, the plaintiff had a positive job review in March 2010, four months after the

accident, was able to perform competently for nearly a full-year after the accident, and was laid off with four other employees. (Exhs. P; Q, p. 25-27, 36-37). Further, contemporaneous medical records from March and September 2010 specifically note preexisting arthritis in her knee. (Exh. E, I). These issues were noted by the claim adjustor and he sought further medical records to determine her condition prior to the accident. (Exhs. P, R, p. 41-42). *See Kosierowski,* 51 F. Supp. 2d at 592 (E.D. Pa. 1999) (discussing negotiation in insurance coverage cases involving uncertain injuries). Together, the defendant noted several valid reasons for requiring a further investigation into the Mrs. Miezejewski's claim. Complex claims warrant substantial investigation and may provide a reasonable basis for collecting additional information. *See Alberici v. Safeguard Mut. Ins. Co.*, 444 Pa. Super. 351, 357, 664 A.2d 110, 113 (1995). The defendant had a reasonable basis for making its initial offer of $5,000 and subsequent increase to $7,500. The defendant further had a reasonable basis to inquire further into the plaintiff's prior medical condition and wage loss claim.

Therefore, finding that a jury could not find, by clear and convincing evidence, that the defendant's course of conduct did not rest on a reasonable basis and therefore constituted bad faith under 42 Pa.C.S. §8371, the court is compelled to grant the motion for summary judgement with respect to the

bad faith claim.

## V. CONCLUSION

For the reasons discussed above, the defendant's motion for partial summary judgment, (Doc. No. 17), is **GRANTED**. An appropriate order shall follow.

s/ *Malachy E. Mannion*<br>
**MALACHY E. MANNION**<br>
**United States District Judge**

**Dated: January 22, 2014**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2012 MEMORANDA\12-1000-01.wpd